**AMERICAN SAMOA GOVERNMENT, Plaintiff**

**v.**

**ETI FEALOFA'I, Defendant**

High Court of American Samoa
Trial Division

CR No. 3-93

April 28, 1993

Before KRUSE, Chief Justice, MAILO, Associate Judge, and BETHAM, Associate Judge.

Counsel: For Plaintiff, Donald M. Sheehan, Assistant Attorney General
For Defendant, Togiola T.A. Tulafono

Defendant Eti Fealofa'i brought a number of pre-trial motions.

### A. On Motion to Dismiss

Defendant moves to dismiss Count II of the Information, on the grounds that Count II, Assault in the First Degree, is a lesser-included offense of Count I, Murder in the Second Degree. As we stated in *American Samoa Government v. Moafanua*, 4 A.S.R.2d 33, 35 (1987) (quoting *Brown v. Ohio*, 432 U.S. 161, 166 (1977)), offenses are not inclusive so long as "each provision requires proof of a fact that the other does not."

However, a close reading of the relevant statutes, A.S.C.A §§ 46.3503 & 46.3520, reveals no element of the latter which is not present in the former. A.S.C.A. § 46.3520, Assault in the First Degree, includes the inchoate offense of homicide and, as such, is necessarily a lesser-included offense of Murder in the Second Degree.

Defendant's Motion to Dismiss Count II of the Information is therefore GRANTED.

### B. On Motion to Suppress Written Statement

Defendant also moves to suppress the written statement provided to a Special Investigator of the Department of Public Safety. He contends that the statement was made while he was in a custodial situation, as "the target of police investigation," and that the failure to provide him with his "Miranda rights" at that time prevents the admission of the statement.

We are not persuaded, however, that the defendant, a police officer himself, was in a custodial situation at the time the statement was made. Nor do we find any indication that the statement was less than fully voluntary. The Special Investigator testified that the defendant was not the "target" of the investigation when Fealofa'i provided his written statement, only hours after the alleged incident occurred. To the contrary, the Special Investigator merely wanted to find out "what had happened," in general terms, and did not question the defendant with an

11

eye towards confirming any pre-existing theory as to what had occurred. The defendant was not arrested after giving his statement.

While it is true that the statements were given at the Tafuna Police Substation, this was the defendant's place of employment, a familiar and non-threatening environment. The defendant was on duty at the time the statement was made. The Special Investigator was not wearing any sort of uniform which might intimidate the defendant, nor was it certain that he even outranked the defendant. There was no indication that defendant was not free to leave (save, perhaps, that he was still on duty) or that he was compelled to provide the written statement. In short, there was nothing in the evidence to suggest that the defendant was in a custodial situation at any time, or that a coercive atmosphere existed, when he provided his written statement.

The Motion to Suppress the Written Statement of the Defendant is, therefore, DENIED.

### C. On Motion to Suppress Photographic Line-Up

Defendant's penultimate motion, to suppress any and all information obtained as a result of the photographic line-up conducted by the Attorney General's Office, alleges that the method of identification of the defendant was unduly prejudicial. According to the Attorney General's investigator, Sam Matagi, the alleged victims were shown an array of twenty-one photographs. Of these photographs, snipped from driver's licenses, seven were of the defendants in the present case, four were of other safety officers present at either Kanana Fou or the O.M.V. police substation on the night in question, while the balance was a mix of safety officers not present that night and ordinary civilians. According to Matagi, on the reverse of each of the photographs was a number. When the alleged victims singled out one of the photographs, Matagi would note down the number, then correlate that number with the appropriate name. In some instances, the alleged victims knew the name of the officer already. Matagi testified that under no circumstances did he suggest to the alleged victims the names of the defendants or single out one particular photograph for special attention.

The defendant alleges that this photographic line-up procedure was unduly suggestive and prejudicial. We disagree. In determining admissibility of identification testimony, "reliability is the linchpin." *Government of American Samoa v. Afamasaga*, 17 A.S.R.2d 145, 147 (1990) (quoting *Manson v. Braithwaite*, 432 U.S. 98, 114 (1977)). In

12

*Afamasaga*, we rejected the defendant's allegation that a one-on-one confrontation was unduly suggestive, after noting that "even an impermissibly suggestive identification procedure does not render an identification inadmissible if, in the totality of circumstances, the identification was nonetheless reliable." *Id.* at 146. Factors which are to be considered in judging reliability include

> the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of his prior description of the criminal, the level of certainty demonstrated at the confrontation, and the time between the crime and confrontation. Against these factors is to be weighed the corrupting effect of the suggestive identification itself.

*Id.* at 147. The identification procedure used in the instant case is less susceptible to the charge of suggestiveness than the one challenged in *Afamasaga*. There is no reason to question either the reliability of the photo line-up . or the sworn testimony of the Attorney General's investigator to the effect that he did not suggest the names of any of the defendants.

The Motion to Suppress the Photographic Line-Up is, therefore, DENIED.

### D. On Motion for Severance

Defendant, in his final motion, seeks a separate trial. He asserts that if this is not done, the jury will infer conduct of his co-defendants upon him, in contravention of his right to an impartial jury. Additionally, he maintains that, due to the large number of defendants and the relatively small number of peremptory challenges, he will face a jury containing members that "he does not want there."

We note at the outset that the decision to sever properly joined defendants (and all parties have agreed that defendants were properly joined, per T.C.R.Cr.P. 8(b)) is made at the sound discretion of the trial court. *See, e.g., United States v. Lane,* 474 U.S. 438, 449, n.12 (1986). The United States Supreme Court has stated that a

> court should grant a severance under Rule 14 [the equivalent of T.C.R.Cr.P. 14] only if there is a serious risk that a joint trial would compromise a specific trial

13

> right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence. . . . For example, evidence of a codefendant's wrongdoing in some circumstances erroneously could lead a jury to conclude that a defendant was guilty. When many defendants are tried together in a complex case and they have markedly different degrees of culpability, this risk of prejudice is heightened.

*Zafiro v. United States*, 61 U.S.L.W. 4147, 4148 (U.S. Jan. 26, 1993) (No. 91-6824). While none of these factors mandates that a separate trial be granted, they are to be considered in deciding upon a severance motion.

Defendant's contention that he will be unable to utilize his peremptory challenges to screen-out jurors that he does not want is wholly lacking in merit. It is well settled that a defendant does not have the right to a trial by any particular jury or jurors, but only to a trial by a competent and impartial jury. *American Samoa Government v. Agasiva*, 4 A.S.R.2d 110, 112 (1987). In addition, T.C.R.Cr.P. 24(b) gives the trial court discretion, in joint trials, to grant additional peremptory challenges to the defendants, so as to relieve possible inequities of such trials.

Taking into account all of the above considerations, the court agrees to spare the defendant the possible burden of being tried together with eight other defendants. Instead, he will be tried with only a single co-defendant, Thomas Schuster. The similarity of the charges aimed at these two defendants makes theirs a logical pairing.

The Motion for Severance is, therefore, GRANTED, on the conditions stated above.

It is so ordered.

It is further ordered that trial in this matter shall be held as previously scheduled.